UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL L. RAMBO, JR.,

Plaintiff,

v.

SERGEANT STACEY SMILEY,

Defendant.

CAUSE NO. 3:18-CV-740-JD-MGG

OPINION AND ORDER

Michael L. Rambo, Jr., a prisoner without a lawyer, is proceeding in this case, "against Sergeant Stacey Smiley in her individual capacity for compensatory damages for spraying him with pepper spray on May 10, 2018, in violation of the Eighth Amendment." ECF 5 at 3. The defendant filed a motion for summary judgment, arguing that Rambo did not exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). ECF 25. With the motion, the defendant also served a Notice as required by N.D. Ind. L.R. 56-l(f). ECF 28. The Notice informed Rambo:

> A summary-judgment motion has been filed against you. Attached is a copy of the motion. It asks the court to decide all or part of your case without a trial. It says that there should not be a full trial because you cannot win some or all of your claims. It asks the court to enter judgment against you. The party that filed the motion will win if the facts show that party is entitled to judgment. If you do not agree with the facts in the motion, you must submit affidavits or other evidence to dispute those facts.
>
> Copies of Rule 56 and Local Rule 56-1 are also attached. You should carefully read—and follow—all the rules. The outcome of this case may depend on it. Following the rules does not guarantee that the summary-judgment motion will be denied. But if you do not follow the rules, you may lose this case.

> Before the court rules on the motion, you have the right to file a response. If you do not respond to the summary-judgment motion, you may lose this case. If you need more time to respond, you must file a motion asking for more time before the deadline expires. The court may—but is not required to—give you more time.

*Id*. at 1. The attached copy of Local Rule 56-1 informed Rambo he had 28 days to file a response brief and any materials necessary to raise a genuine dispute. *Id*. at 4. He had three additional days because the motion was mailed. Federal Rule of Civil Procedure 6(d). Thus, he had until Friday, April 5, 2019, to file his response. He did not file a response by the deadline.

However, on April 18, 2019, a letter from Rambo was docketed in which he requested an attorney to "help [him] through the paperwork." ECF 31. The court denied Rambo's request, noting that there is no right to court-appointed counsel in federal civil litigation and that Rambo made no mention of having made any attempt to obtain counsel on his own. ECF 32 at 1. The court also pointed out that the only issue pending before the court was one of exhaustion, which "involves the narrow questions of whether a grievance process was available at the Westville Correctional Facility and whether Rambo completed the grievance process with respect to his claims." *Id*. at 2. As noted, "[n]either question is legally complex or difficult." *Id*. Rambo also explained that he had been confined to segregation and did not have access to the law library. Although the court noted that it was unclear what information could be obtained in the law library that would help Rambo address the issue of exhaustion, in the interests of justice, he was granted additional time to respond to the defendant's summary judgment motion. *Id*. The deadline was extended to August 5, 2019. *Id*. To date, Rambo

has neither responded to the motion nor filed any additional documents, motions, or requests with the court.

Rambo was advised of the importance of responding to the summary judgment motion. He was told he could ask for more time if he needed it. Even though he did not specifically ask for it, he was granted additional time. He was told this case could be dismissed if he did not respond. Nevertheless, he did not respond. Therefore, the court will review the summary judgment motion without a response from him.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine dispute of material fact exists, the court must "construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). Summary judgment "is the put up or shut up moment in a lawsuit . . .." *Springer v. Durfiinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The

Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Thus, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

That said, inmates are only required to exhaust administrative remedies that are available. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears on paper but rather whether the process was in actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered available. *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809. Courts have recognized three ways in which a grievance process may become unavailable. *Ross v. Blake*, --- U.S. ----, 136 S. Ct. 1850 (2016). First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme

might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Here, the defendant has submitted the declaration of John R. Harvil, the Offender Grievance Specialist at the Westville Correctional Facility. ECF 27-1. He affirms under penalty of perjury that Westville had a grievance process in place at the time of the events alleged by Rambo. *Id*. at 2; *see also* ECF 27-2 (Offender Grievance Process, IDOC Policy and Administrative Procedure 00-02-301, effective April 5, 2015). He affirms that all inmates are made aware of the process during orientation and that copies are available in various places throughout the facility. ECF 27-1 at 2. He indicates that the grievance process has several steps and that each step must be timely pursued, including the appeals process. *Id*. at 2–4. Those steps include: (1) an informal attempt to resolve the process within five days of the incident; (2) the formal initiation of the grievance process by submitting state form 45471 to the Offender Grievance Specialist within five to twenty days, depending on how the informal process concluded; and (3) the filing of a formal appeal to IDOC's Offender Grievance Manager if the grievance is not resolved to the satisfaction of the offender or if the offender does not receive a grievance response within fifteen days. *Id*. He also affirms:

> I am aware that Offender Michael L. Rambo has filed litigation against Stacey Smiley, alleging that excessive force was used against him when he was sprayed with pepper spray. This is an issue that can be grieved under

> the Offender Grievance Process. I have examined a history of grievances for Offender Rambo and his returned grievances, to determine whether Offender Rambo filed a formal grievance or formal appeal regarding his alleged [offense]. Offender Rambo did not file a formal grievance against Stacey Smiley regarding the alleged incident. Offender Rambo did not file a formal appeal regarding Stacey Smiley or the alleged incident.

*Id*. at 4 (paragraph numbers omitted).

As noted above, Rambo has not directly responded to any of these contentions. However, Rambo did mention the grievance issue in response to the defendant's requests for admissions, which were filed *prior* to the motion for summary judgment. *See* ECF 14, ECF 16. When asked to admit that he did not file a formal grievance regarding the incident, he stated, "I never got the opportunity I tried to get forms by filling out request they never came back." ECF 16 at 1. When asked to admit that he did not file a formal appeal to the Offender Grievance Manager, he stated, "No I wrote a complaint out to the Warden 3 times on a request slip but apparently I never got any response back." *Id*. Based on the foregoing, there is no dispute that Rambo did not complete the grievance process with respect to his claim before filing this lawsuit. The only possible dispute concerns whether the grievance process was technically "unavailable" to him because prison officials thwarted his efforts to take advantage of it. *See Ross*, 136 S. Ct. at 1860.

Under prevailing caselaw, Rambo could be excused from failing to exhaust if officials did not provide him with the necessary forms or otherwise interfered with his ability to file a grievance. *Kaba*, 458 F.3d at 684; *Dole*, 438 F.3d at 809. However, Rambo has not responded directly to the motion for summary judgment regarding this issue,

and his answers to the defendant's requests for admission are extraordinarily vague. Although he states generally that he tried to get the forms yet they never came back, he does not indicate which specific forms he requested, when he allegedly made the requests, to whom he made the request(s), or what, if anything, he did when he realized he could not obtain the forms. *See* ECF 16 at 1. The Offender Grievance Process notes that the Offender Grievance Specialist must provide State Form 45471 to an offender, upon request, within one business day. ECF 27-2 at 16. It goes on to state that:

> If an offender does not receive either a receipt or a rejected form from the facility Offender Grievance Specialist within seven (7) working days of submitting it, the offender shall immediately notify the facility Offender Grievance Specialist of that fact (retaining a copy of the notice) and the facility Offender Grievance Specialist shall investigate the matter and respond to the offender's notification.

*Id*. at 16–17. Rambo has not provided any evidence that he communicated directly with the Offender Grievance Specialist or submitted any follow-up notifications to that individual.

Additionally, when asked to admit that he did not file a formal appeal to IDOC's Offender Grievance Manager regarding the incident, he responded simply that he wrote to the Warden several times but never received a response. *See* ECF 16 at 1. The Offender Grievance Process provides that an appeal may be taken to the Offender Grievance Manager and that the "right to appeal is absolute." ECF 27-2 at 20. Moreover, even if an offender does not receive a response within twenty business days from the Offender Grievance Specialist, "the offender may appeal as though the grievance had

been denied." *Id*. at 21. Rambo has not provided any evidence that he attempted to communicate with or appeal directly to the Offender Grievance Manager.

An inmate must offer specifics about his attempts to exhaust in order to create a genuine dispute of fact. *See Schultz v. Pugh,* 728 F.3d 619, 620 (7th Cir. 2013) (because prisoner failed to set forth specifics about why he was unable to exhaust, summary judgment for the defendants was proper); *see also Dale v. Lappin*, 376 F.3d 652, 655–56 (7th Cir. 2004) (plaintiff who offered concrete details in a sworn statement submitted in response to the defendants' motion was enough to defeat summary judgment, whereas vague assertions are not sufficient to create a genuine issue of fact on exhaustion issue). In *Dale*, the Seventh Circuit described the "level of detail" necessary and found that the plaintiff had provided "sufficiently specific facts" to support his assertion that he had attempted to exhaust but was prevented from doing so. *Id*. at 656. The court noted that the plaintiff had "identifie[d] the prison employees from whom he requested forms: his counselor, his case manager, the on-duty floor officer, and members of his unit team." *Id*. at 655–56. He also identified the "specific form he requested, the BP–8, which is the first form the Bureau of Prisons requires inmates to complete in order to submit a grievance." *Id*. at 656 (citations omitted). In addition, he had averred that:

> the on-duty officer gave him blank sheets of paper when he requested a grievance form, that he was told by his counselor and case manager that they did not have the proper grievance form, that he requested a form from his counselor and was told that forms had to be issued by the unit team, and that he notified the members of his unit team several times that he had been denied grievance forms, but got no response.

*Id.*; *see also Kaba*, 458 F.3d at 682 (citing *Dale* with approval and noting that the plaintiff's "specific and detailed" affidavits, which included facts about "the withholding of grievance forms, direct threats, and an inmate assault," were sufficient to stave off summary judgment on the exhaustion issue).

Here, Rambo has not provided any specifics about his alleged attempts to exhaust—his vague contentions that he requested forms and complained to the Warden on unspecified dates do not serve to create a genuine dispute regarding the availability of the grievance process.[1] Based on the Offender Grievance Process, as set forth in IDOC Policy and Administrative Procedure 00-02-301, and the undisputed declaration of John R. Harvil, the Offender Grievance Specialist at Westville, Rambo did not exhaust his administrative remedies. Therefore, this case must be dismissed without prejudice. *See* 42 U.S.C. § 1997e(a); *see also Perez*, 182 F.3d at 535.

For these reasons, the motion for summary judgment (ECF 25) is GRANTED. This case is DISMISSED WITHOUT PREJUDICE because Michael L. Rambo, Jr., did not exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).

SO ORDERED on March 10, 2020

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT

[1] Rambo's answer to the Alternative Interrogatory—in which he was asked to provide additional details for each Request for Admission that he failed to admit without qualification—simply rehashes his responses to the original Requests. *See* ECF 16 at 2.